Case 16-02067-GLT    Doc 30    Filed 02/16/17    Entered 02/16/17 14:56:52    Desc Main
Document    Page 1 of 10

FILED
2/16/17 2:33 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 16-21342-GLT |
| | Chapter 11 |
| RGW PROPERTIES OF BEAVER COUNTY, INC., | |
| | Related to Dkt. Nos. 6 and 7 |
| Debtor. | |
| | |
| RGW PROPERTIES OF BEAVER COUNTY, INC., | Adv. No. 16-02067-GLT |
| Plaintiff, | Related to Dkt. No. 1 |
| v. | |
| NATIONSTAR MORTGAGE, LLC, | |
| Defendant. | |

## MEMORANDUM ORDER

The Debtor, RGW Properties of Beaver County, Inc. ("RGW"), seeks final approval of its disclosure statement and confirmation of its small business chapter 11 plan over the objection of its primary secured creditor, Nationstar Mortgage, LLC d/b/a Champion Mortgage Company ("Nationstar").[1] In a related adversary proceeding, RGW seeks a determination as to the allowed amount of Nationstar's secured claim.[2] Although the Court held five hearings to consider confirmation of the *Plan*, RGW and Nationstar have been unable to agree on the value of Nationstar's collateral or the appropriate treatment for Nationstar's claim within the *Plan*. For the

---

[1]   See *Disclosure Statement to Accompany Plan dated April 7, 2016* (the "Disclosure Statement"), Dkt. No. 39; *Chapter 11 Small Business Plan dated April 7, 2016* (the "Plan"), Dkt. No. 6; *Objection to Confirmation of Chapter 11 Plan dated April 7 2016* (the "Objection"), Dkt. No. 39. Unless otherwise noted herein, all references to the docket pertain to Case No. 16-21342-GLT.

[2]   See *Complaint - § 506 Action to Determine Secured Status* (the "Complaint"), Adv. No. 16-02067-GLT at Dkt. No. 1; *Answer with Affirmative Defenses* (the "Answer"), Adv. No. 16-02067-GLT at Dkt. No. 23.

reasons set forth herein, the Court concludes that Nationstar has an allowed secured claim in the amount of $24,000, and it will confirm the *Plan*.

## **FINDINGS OF FACT**

RGW is a single asset real estate entity holding title to certain rental property located at 117 Renn Lane in Beaver Falls, Pennsylvania (the "Property").[3] Nationstar holds a mortgage lien against the Property which secures the obligations from an August 2004 loan in the original principal amount of $187,500.[4]

RGW acquired the Property through separate upset tax sales conducted by the Beaver County Tax Claim Bureau. It contends that Nationstar failed to pay the delinquent taxes or intervene at the tax sales conducted in September 2014 and September 2015, thereby providing RGW with the opportunity to obtain an interest in the Property.[5]

The Court takes judicial notice of two deeds recorded in the official records of Beaver County, Pennsylvania which relate to this transaction. The first is a deed filed with the Recorder of Deeds of Beaver County, Pennsylvania showing the transfer of an interest in the Property from the Tax Claim Bureau to David R. and Beverly L. Wallace on October 1, 2015.[6] A second deed reveals a transfer of the Property from the Wallaces to RGW on March 29, 2016.[7]

---

[3] Dkt. Nos. 1, 7.

[4] Claim No. 1-1.

[5] Dkt. No. 7. RGW's *Disclosure Statement* represents that the Property originally comprised of two separate parcels and was purchased at the September 2014 and September 2015 upset sales in Beaver County, Pennsylvania through an agency agreement with David and Beverly Wallace. The property was then transferred to RGW for nominal consideration in late March 2016. Nationstar has not disputed these statements.

[6] The deed from the Tax Claim Bureau was recorded in Beaver County on January 27, 2016 as Instrument No. 3522523.

[7] This deed was recorded by RGW in Beaver County on April 5, 2016 at Instrument No. 3526210.

Nationstar claims the tax sale was defective because it was not afforded adequate notice of the sale. To date, however, Nationstar has not undertaken any action to challenge RGW's deed, re-open the sale process, or otherwise seek relief from the automatic stay to clarify its rights under applicable non-bankruptcy law.

This bankruptcy case was commenced on April 7, 2016 when RGW filed its voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et. seq.* On the same day, RGW filed its *Plan* which proposes to pay Nationstar's "partially secured claim" at 4.0% interest over the course of ten years.[8] The *Plan* provides that RGW will commence an adversary complaint against Nationstar to determine the secured portion of its claim. Based upon an appraisal conducted by ECA/Ed Cline Appraisals in February 2016, RGW contends that the fair market value of the Property is no more than $20,000.[9] The *Plan* does not propose payment on account of any unsecured deficiency claim Nationstar may assert because "no pre-petition contract [or obligations] existed between the parties prior to the bankruptcy filing."[10] RGW commenced the adversary proceeding against Nationstar on April 8, 2016.[11]

The Court conditionally approved RGW's disclosure statement for solicitation and set a date for the confirmation hearing.[12] The *Plan* was accepted by an impaired class of creditors

---

[8]    Dkt. No. 6 at p. 5.

[9]    Dkt. No. 7 at p. 3; see also Dkt. No. 1. Schedule A of RGW's petition values the Property at $20,000 based upon this appraisal.

[10]   Dkt. No. 6 at p. 6.

[11]   Adv. No. 16-02076-GLT, Dkt. No. 1.

[12]   Dkt. Not. 27.

holding secured real estate tax claims, but was rejected by Nationstar, the sole member of the only other creditor class entitled to vote on the *Plan*.[13]

Nationstar is the only party to file an objection to the *Plan*. In its proof of claim, Nationstar contends that its claim was fully secured in the amount of $155,863.56.[14] Nationstar opposes the *Plan* because it does not pay the secured claim in full, nor does it provide a suitable cram down interest rate over the proposed payment term.[15] It also opposed the relief sought by RGW in the adversary proceeding.

The Court set a discovery schedule to afford the parties time to address the contested issues as they pertained to both plan confirmation and the adversary proceeding.[16] During the course of discovery, Nationstar reported that it obtained an appraisal which suggested that the value of the Property was $24,000.[17] Following this revelation, the Court directed the parties to explore a potential resolution of their dispute since their valuation opinions were not materially different.

The parties were unable to settle their dispute and the Court conducted a final pre-trial conference in the adversary proceeding and a plan confirmation hearing two months later.[18] Rather than present evidence, RGW agreed to accept Nationstar's appraisal and its $24,000

---

[13] Dkt. No. 37. Although the Plan created additional classes for priority tax claims and unsecured claims, there are no allowed claims that fall within either classification. See Dkt. No. 1 and the Claims Register.

[14] Claim No. 1-1.

[15] Dkt. No. 39.

[16] Dkt. No. 41; see also Adv. No. 16-02076-GLT, Dkt. No. 24.

[17] Dkt. No. 56.

[18] After the first confirmation hearing held on June 16, 2016, the Court continued the matter to a status conference on July 21 and August 25, 2016 while discovery in the adversary proceeding commenced. By *Order* dated August 26, 2016 [Dkt. No. 52], the Court continued the status conference and reset the confirmation hearing for October 20, 2016. Both matters were again continued to December 1, 2016.

valuation. It also agreed to modify the interest rate payable on Nationstar's secured claim to 5.5%. For its part, Nationstar conceded that it could offer no other evidence of value.

The Court must now determine the value of the Property (as required by the adversary proceeding) and address plan confirmation based upon the record before it. Pursuant to the Court's pretrial order in the adversary proceeding, the parties were directed to identify their exhibits and potential witnesses by October 20, 2016, but they failed to do so.[19] The pretrial Order also provides that any party that does not comply with the pretrial deadlines can be prohibited from introducing undisclosed evidence at any subsequent evidentiary hearing. Given that the parties did not make the requisite disclosures and were unable to produce any probative evidence beyond their various stipulations, the Court finds the matter is ripe for adjudication and any further delay is unwarranted.

## CONCLUSIONS OF LAW

These matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B) and (L). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). This Memorandum constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

As an initial matter, the Court must first address the contention that the Property does not constitute property of the estate. Nationstar asserts that RGW cannot hold valid title to the Property when it was the procured through a defective tax sale.[20] It alleges that it did not

---

[19] Adv. No. 16-02076-GLT, Dkt. No. 24.

[20] This argument was not raised in any pleading filed with the Court, but was instead vocalized by Nationstar's counsel during the confirmation proceedings.

receive proper notice of the tax sale in Beaver County, thereby rendering the entire sale void. Significantly, however, Nationstar does not dispute that RGW obtained a deed to the Property.

The determination of whether property constitutes an asset of the estate under section 541 turns on federal law, but the underlying property interests themselves are created and defined by state law.[21] The question presented here is whether, as of the petition date, RGW had an ownership interest in the Property that was recognized under applicable state law. Under Pennsylvania law, a tax sale is presumptively valid when confirmed and acknowledged in open court.[22] Furthermore, the execution and recording of a deed raises a presumption of validity which places the burden of proof on any party seeking to challenge the transfer.[23]

In this case, Nationstar has not overcome either the presumption that the tax sale was valid or the presumption that RGW is the owner of the Property by virtue of its recorded deed. Nationstar has made no effort to affirmatively invalidate the deed by commencing an action to challenge the tax sale either in the state court or through these bankruptcy proceedings.[24] Nationstar also failed to produce any evidence that might undermine the validity of the tax sale or the efficacy of the tax deed. Unless and until the deed is expressly voided under applicable state law, the Court is compelled to recognize the validity of the deed and consider RGW as the owner

---

[21] See Butner v. United States, 440 U.S. 48, 55 (1979); In re Nejberger, 934 F2d 1300, 1302 (3d Cir. 1991); Congress Talcott Corp. v. Gruber, 993 F.2d 315, 319 (3d Cir. 1993).

[22] Northrup v. Pennsylvania Game Com'n, 458 A.2d 308, 309-10 (Pa. Cmwlth. 1983) (explaining that the rule of presumptive validity is based upon the presumption that the acts of public officers are regular).

[23] See Wagner v. Wagner, 353 A.2d 819, 823-24 (Pa. 1976) ("[C]onveyance of real property by way of deed is presumptively valid and will not be set aside unless it is shown by clear and convincing evidence that the transfer was improperly induced by fraud or other misconduct on the part of the transferee or that the deed was ineffective to pass title, as, for example, where the deed was not delivered."); see also In re Walkinshaw's Estate, 118 A. 766, 768 (Pa. 1922).

[24] The Court finds it significant that Nationstar did not request stay relief to pursue remedies in the state court to ascertain the validity of the tax sale or the deed issued to RGW.

of the Property. As RGW held title to the Property on the petition date, its rights therein constitute property of the estate which can be utilized within the contemplated reorganization.

The Court will now address the merits of the *Plan*. The parties do not dispute that all but two of the confirmation requirements set forth in section 1129 of the Bankruptcy Code are satisfied by the *Plan*. Instead, Nationstar objects to the proposed treatment of its secured claim, thereby implicating the *Plan's* compliance with sections 1129(a)(8) and (b)(1) because it did not vote in favor of the *Plan* as the sole member of class 3. Nationstar does not allege that the plan discriminates unfairly, and thus the Court's analysis will focus on whether the *Plan* is fair and equitable. Namely, the Court must discern whether Nationstar will receive deferred cash payments equivalent to the allowed amount of its secured claim, and with a value, as of the effective date, of at least the value of Nationstar's interest in the Property.[25]

Resolution of the objection turns on the appropriate valuation of the Property, and the amount of Nationstar's allowed secured claim. As explained previously, RGW commenced an adversary proceeding to cram down Nationstar's secured claim to an allowed value of $20,000. In late 2016, Nationstar obtained an appraisal of the Property which resulted in a valuation of $24,000. The valuations asserted by each party differ by only $4,000. Nationstar concedes that it can produce no additional evidence as to the value of the Property. Based upon the record, and in light of the Debtor's consent to the value obtained through Nationstar's appraisal, the Court concludes that the appropriate valuation of the Property for the purpose of establishing the value of Nationstar's secured claim is $24,000.

Nationstar also objects to the *Plan's* proposal to re-amortize its allowed secured claim at a 4% interest rate. Nationstar argues that, in order to confirm the *Plan* under section 1123

---

[25] See 11 U.S.C. §1129(b)(2)(A)(II).

of the Bankruptcy Code, its claim should be paid under the *Plan* at an interest rate equal to the current national prime rate, plus the appropriate "risk adjustment" figure, pursuant to the United State Supreme Court's decision in Till v. SCS Credit Corp., 541 U.S. 465 (2004). In Till, the Supreme Court applied this "formula approach" to determine the appropriate rate of interest on a cram down loan in the context of a proceeding under chapter 13 of the Bankruptcy Code:

> [T]he approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan.[26]

The Supreme Court declined to establish a definitive "risk adjustment" figure, leaving the determination to bankruptcy courts while noting that courts have generally approved risk adjustments of 1% to 3%.[27] The burden lies on the creditor seeking an increase of the rate adjustment figure to produce evidence in support of such increase.[28]

At the time the *Plan* was proposed, and as of the date of the December 1 pretrial conference, the national prime rate was 3.5%.[29] Both the Debtor and Nationstar acknowledged this rate. With respect to the appropriate risk adjustment figure, Nationstar maintains in its *Objection* that, "lacking evidence to the contrary, a risk adjustment of 2% is reasonable."[30]

---

[26] Till, 541 U.S. at 478–79.

[27] Id. at 480; see also In re Golash, 428 B.R. 189, 191 (Bankr. W.D. Pa. 2010).

[28] Till, 541 U.S. 479; Golash, 428 B.R. at 191-92.

[29] The national prime rate, as published in the Wall Street Journal, increased to 3.75% as of December 15, 2016.

[30] Dkt. No. 39 at ¶¶ 9-10.

Therefore, under Till's formula approach, the appropriate cram down rate to be used in the re-amortization of Nationstar's claims is 5.5%. The Debtor consented to a 5.5% cram down interest rate at the December 1 pre-trial conference. Nationstar has not presented any evidence to support an upward adjustment of the risk adjustment factor. Therefore, the Court finds that the appropriate cram down interest rate to be applied to Nationstar's secured claim under a confirmable plan is 5.5%.

The Court is prepared to confirm the Debtor's *Plan* with Nationstar holding a secured claim of $24,000 to be re-amortized over ten years at a 5.5% interest rate. At the December 1 confirmation hearing, counsel for Nationstar alluded to the fact that Nationstar *may* have an issue with the ten-year repayment term proposed under the plan. Although Nationstar contends that this argument was previously raised in its written objection to confirmation, the Court does not find this to be the case. Moreover, without contradictory evidence, the Court finds that re-amortization over ten years is reasonable and no basis exists to deny confirmation on this ground.

For purposes of plan confirmation, the Court finds that Nationstar holds an allowed secured claim in the amount of $24,000 to be paid over a 10-year term at an interest rate of 5.5%. It appears that this finding resolves all outstanding issues in the pending adversary proceeding. The Court also finds that the treatment of Nationstar's secured claim satisfies the fair and equitable standard set forth in section 1129(b). With the resolution of Nationstar's claim, no other outstanding issues prevent confirmation of the *Plan*. The *Summary of Ballots* [Dkt. No. 37] filed on June 8, 2016 indicates that no other impaired class rejects the *Plan*.

As all necessary requirements for confirmation under section 1129 of the Bankruptcy Code have been satisfied, the Court will issue an appropriate *Order* confirming the

*Plan* and approving the *Disclosure Statement* on a final basis.[31] The Court will also issue a separate *Order* granting the relief requested by the Plaintiff in the *Complaint* filed at Dkt. No. 1 in Adv. No. 16-02067-GLT.

Dated:  February 16, 2017

                                                                    GREGORY L. TADDONIO
                                                                      UNITED STATES BANKRUPTCY JUDGE

<u>Case administrator to mail to:</u>
Debtor
Edgardo Santillan, Esq.
Nationstar Mortgage, LLC
Peter Ashcroft, Esq.
Office of the United States Trustee

---

[31] The *Disclosure Statement* was approved on a conditional basis by *Order* dated April 26, 2016. [Dkt. No. 27]. The Court did not receive any objections to the *Disclosure Statement*.